IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CUDD PRESSURE CONTROL, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-12-1178-D |
| ) | |
| NEW HAMPSHIRE INSURANCE ) | |
| COMPANY, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**O R D E R**

This matter came before the Court for hearing on December 27, 2013, regarding a discovery dispute that remained unresolved following an in-chambers conference between counsel for the parties. The parties presented the following issues for decision by the Court: 1) the privilege claims and waiver issues raised by Plaintiff's Motion to Compel [Doc. No. 89]; 2) relevance of the "FARA documents" sought by Plaintiff's Motion to Compel Production Pursuant to Subpoena Duces Tecum Served on Non-Party F.A. Richards and Associates, a/k/a FARA Insurances Services [Doc. No. 98]; and 3) various issues raised by Plaintiff's Third Motion to Compel Production of Documents from Defendants [Doc. No. 112], discussed *infra*.

During the hearing, Plaintiff conceded that its Second Motion to Compel Production of Documents from Defendants [Doc. No. 104] concerned a file kept by an individual employee, Melissa Valerio, that cannot be found and presumably was destroyed; thus, the issue of its production is moot. Also, at the conclusion of the hearing, the Court directed the filing of supplemental briefs regarding Plaintiff's request for Defendants' financial information. Through this additional round of briefing, the parties have reached an agreement to stipulate to the accuracy of publicly available financial reports. *See* Pl.'s Suppl. Resp. Br. [Doc. No. 127] at 2; Defs.' Suppl.

Reply Br. [Doc. No. 129] at 2-3, ¶¶ 2, 4. The Court proceeds to address only the remaining contested issues.

**A.      Factual Background**

This case involves claims for breach of contract and breach of an insurer's duty of good faith and fair dealing arising from Defendants' denial of coverage and failure to indemnify Plaintiff for a prior lawsuit alleging the wrongful death of an employee. Cudd Pressure Control, Inc. is an oilfield service company that was sued by the employee's widow under *Parret v. UNICO Service Co.*, 127 P.3d 572 (Okla. 2005), which recognized an exception to the exclusive remedy provisions of the Workers' Compensation Act upon proof of intentional conduct by an employer with knowledge of a "substantial certainty" of injury to workers. Both defendants issued employers liability policies to RPC, Inc. (Plaintiff's parent company) which covered Cudd, and National Union Fire Insurance Company issued an umbrella policy that was in effect during the relevant time. Defendants provided a defense of the underlying lawsuit, which resulted in a summary judgment ruling in Cudd's favor. *See Phillips v. Cudd Pressure Control, Inc., et al.*, No. CIV-09-1197-M, Order (W.D. Okla. April 6, 2012). During the pendency of the case, however, Defendants denied coverage under the various policies, and subsequently refused to participate in a settlement of the *Phillips* case on appeal.

**B.      Discovery Issues**

    **1.      Claims of Privilege/Waiver**

Defendants have redacted or withheld certain documents from production based on claims of privilege for attorney-client communications and attorney work product. The claims are made

with respect to certain pages of documents listed in three privilege logs, copies of which appear as Exhibits 17 and 20 to Plaintiff's Motion to Compel [Doc. Nos. 89-17 and 89-20].

Plaintiff first argues that Defendants cannot claim any privilege for documents that predate this lawsuit because, essentially, Plaintiff was entitled to share any legal advice or work product regarding the *Phillips* case while Defendants were providing Plaintiff's defense or had not taken a final position adverse to Plaintiff. Defendants contend the documents involve attorneys who were engaged to advise Defendants regarding insurance coverage issues, not attorneys who were defending the *Phillips* case. The Court agrees with Defendants that Plaintiff had no right to share in confidential attorney-client communications or receive work product of attorneys who were separately retained by Defendants to advise them regarding their rights and obligations under the insurance policies. *See Roesler v. TIG Ins. Co.*, 251 F. App'x 489, 500 (10th Cir. 2007) ("An insurance company, just as any other individual or entity, has the right to seek confidential legal advice.") (citing Okla. Stat. tit. 12, § 2502(A)(2)).[1]

Plaintiff also contends that Defendants implicitly waived any privilege by placing advice of counsel "at issue" in the case. Plaintiff acknowledges that Defendants have not affirmatively asserted an advice-of-counsel defense in the litigation. However, Plaintiff argues that Defendants have effectively done so because they relied on legal advice from an attorney who is now counsel of record when formulating their coverage position; the extent of Defendants' reliance involved incorporating portions of a coverage opinion letter in correspondence with others – including letters

---

[1] The parties agree that Defendants' claim of privilege is governed by Oklahoma law, while work product protection is provided by Fed. R. Civ. P. 26(b)(3).

to the insured denying coverage – and involving counsel in drafting denial letters.[2] Plaintiff also points to other documents that reflect attorney-client communications; Plaintiff seems to argue that these documents are "at issue" in the case because they are relevant to its bad faith claim. Plaintiff's arguments regarding the substance of the opinion letter and other privileged documents are made possible by Defendants' inadvertent production of them in discovery, as discussed *infra*.

The Court is not persuaded by Plaintiff's implicit waiver argument. Defendants have not taken any affirmative step in this litigation that would make the substance of its attorney's previous advice relevant in the case, as required by the waiver doctrine on which Plaintiff relies. *See Gibson v. State*, 8 P.3d 883, 909 (Okla. Crim. App. 2000); *see also Roesler*, 251 F. App'x at 500 ("It is only when [legal] advice becomes at issue in a *legal proceeding* that the client may be required to disclose the advice of counsel under a theory of implied waiver.") (emphasis in original). Also, Plaintiff has improperly utilized documents subject to a claim of privilege to craft its waiver arguments. Rule 26(b)(5) clearly prohibits the use or disclosure of an inadvertently produced document that is subject to a claim of privilege or work product protection "until the claim of privilege is resolved." *See* Fed. R. Civ. P. 26(b)(5)(B). Thus, Plaintiff cannot rely on the substance of the coverage opinion or other privileged documents to argue that Defendants have waived protection of them. Moreover, Plaintiff's counsel improperly discusses the contents of the documents in publicly-filed briefs while seeking resolution of the claim of privilege. This conduct violates both the letter and spirit of Rule 26(b)(5)(B).

---

[2] Defendants' privilege log identifies some withheld documents as draft correspondence to Plaintiff prepared by the attorneys.

Plaintiff contends Defendants waived the attorney-client privilege with respect to some documents that they produced in discovery as part of the claim file for the umbrella policy. Certain documents have been filed under seal in the case record [Doc. No. 86], and a few more have been provided to the Court *in camera*. These documents reflect a legal opinion regarding coverage and communications regarding coverage advice, and clearly appear to be privileged. Defendants promptly notified Plaintiff that the documents were inadvertently produced, and Defendants have requested to "claw back" the documents as authorized by Rule 26(b)(5)(B). Plaintiff opposes this request and, by its Motion to Compel, seeks a determination that it can retain and utilize the documents. Aside from its implied waiver arguments, Plaintiff's only justification for this result is that the documents were placed in a general claim file and not treated as privileged. Defendants respond that placing privileged documents in an internal file for the claim to which they pertained was reasonable, and was not inconsistent with an expectation that they would remain confidential.

Rule 502 of the Federal Rules of Evidence provides regarding inadvertent disclosures of information covered by the attorney-client privilege or work-product protection as follows:

> When made in a federal proceeding or to a federal office or agency, the disclosure does not operate as a waiver in a federal or state proceeding if:
>
> (1) the disclosure is inadvertent;
>
> (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and
>
> (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

*See* Fed. R. Evid. 502(b). It is undisputed in this case that the documents at issue were inadvertently produced and that Defendants timely sought to rectify the error by invoking Rule 26(b)(5)(B). Plaintiff's concession that the disclosure was inadvertent is appropriate under

5

case law holding that the circumstances of disclosure, particularly production within voluminous discovery materials, is an important consideration. *See Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 388 (7th Cir. 2008).

Here, the question to be answered under Rule 502 is whether Defendants took reasonable steps to prevent disclosure. Also, the parties agree that a multi-factor balancing test like one utilized in the Seventh Circuit is appropriate to guide the Court's analysis.

> Under the balancing approach, a court considers: "(1) the reasonableness of the precautions taken to prevent disclosure; (2) the time taken to rectify the error; (3) the scope of the discovery; (4) the extent of the disclosure; and (5) the overriding issue of fairness."

*Id*. at 388-89 (quoting *Harmony Gold U.S.A., Inc. v. FASA Corp.*, 169 F.R.D. 113, 116-17 (N.D. Ill. 1996)). In this case, Defendants do not address what steps they took to prevent disclosure, except to argue that claim files are routinely reviewed for privileged materials before production occurs. Also, the lengthy privilege log Defendants provided listing documents withheld from production of the umbrella claim file shows that a document review actually occurred.

"The party claiming that its disclosure was inadvertent bears the burden of proving that each of the three elements of Rule 502(b) has been met . . . [including] that it took reasonable steps to prevent disclosure in the first place." *Williams v. District of Columbia*, 806 F. Supp. 2d 44, 48-49 (D.D.C. 2011) (internal quotation omitted) (citing *Amobi v. D.C. Dep't of Corrections*, 262 F.R.D. 45, 53 (D.D.C. 2009)); *see Silverstein v. Federal Bureau of Prisons*, No. 07-cv-02461-PAB-KMT, 2009 WL 4949959 at *10 (D. Colo. Dec. 14, 2009). In this case, Defendants have failed to carry this burden. They do not explain their recordkeeping or review procedures with respect to privileged materials placed in general claim files, nor do they identify who was responsible for conducting the review, how much time was devoted to the task, or what criteria or methodology was used. With

the exception of the coverage opinion, none of the inadvertently produced documents bears any mark that would signal a claim of privilege. The coverage opinion itself does not bear a "confidential" or "privileged" stamp, but merely states in bold print in the "Re" clause of counsel's letter: "LEGAL – COVERAGE COUNSEL." *See* Sealed Exhibit [Doc. No. 86] at p. 7 (ECF page numbering). Here, as in *Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co.*, 132 F.R.D. 204, 209 (N.D. Ind. 1990), "the court is left to speculate what specific precautions were taken" to prevent the disclosure of communications for which a claim of privilege is now made. Further, as in *Williams*, Defendants provide only conclusory statements of counsel in their briefs that are "patently insufficient to establish that a party has discharged its duty of taking 'reasonable steps' to guard against the disclosure of privileged documents." *Williams*, 806 F. Supp. 2d at 49-50.

Under these circumstances, the Court finds that Defendants have failed to overcome the waiver that occurred through their production of privileged documents. This finding of waiver extends only to documents actually produced and not to any other documents on the same subject matter which were withheld from production under a claim of privilege. *See Silverstein*, 2009 WL 4949959 at *9 (observing that Rule 502 "abrogates previous Tenth Circuit law concerning subject matter waivers on disclosed documents otherwise protected by attorney-client privilege and work-product protection") (citing *In re Qwest Communications Int'l, Inc.*, 450 F.3d 1179, 1195 (10th Cir. 2006)). Therefore, to the extent that Plaintiff's Motion to Compel seeks to retain and utilize the inadvertently produced documents, the Motion will be granted.[3]

---

[3] In light of this ruling, the Court declines to sanction Plaintiff's counsel for utilizing the documents before a ruling on their Motion was obtained. However, the Court strongly disapproves of counsel's conduct.

Finally, Plaintiff questions whether all documents withheld from production and redactions from produced documents constitute privileged materials. Plaintiff contends that the privilege logs provided by Defendants are inadequate to determine the legitimacy of their claims of privilege and work product. However, the only particular deficiency noted by Plaintiff is that some entries reflect communications among Defendants' employees and lack sufficient detail to determine how the communications relate to legal advice. At the parties' request, the Court agreed to conduct an *in camera* review of the documents. The Court has now completed its review and finds that Defendants have asserted substantial claims with regard to all documents withheld from production or redacted to omit certain parts. These documents reflect either confidential communications between Defendants and their attorneys or internal discussions of legal advice, including in some instances information needed to obtain or implement the advice, or work product compiled after the suit was filed. Defendants need not disclose any document for which a claim of privilege was timely asserted.

**2.  FARA Documents**

Plaintiff issued a subpoena duces tecum to a nonparty, F.A. Richards and Associates, a/k/a FARA Insurances Services ("FARA"), which served as the third-party claims administrator under workers' compensation/employers liability policies and handled the Phillips claim. Plaintiff sought production of substantially the same documents it had also requested from Defendants in its Fourth Set of Discovery Requests, related to the contractual relationship between Defendants and FARA and any claims-handling guidelines or manuals applicable to FARA's services. Plaintiff has filed a motion to enforce the FARA subpoena, and has included as part of its Third Motion a request to compel Defendants to produce the FARA documents.

8

Defendants have opposed both motions, arguing first that the FARA subpoena was issued by the United States District Court for Eastern District of Louisiana (the federal judicial district where FARA's offices are located) and this Court lacks authority to enforce a subpoena issued in another judicial district.[4] Defendants are plainly correct on this point, and thus, Plaintiff's Motion to Compel Production from FARA will be denied. Accordingly, the Court limits its consideration to Plaintiff's Fourth Set of Discovery Requests to Defendants, specifically, Document Requests No. 15 and No. 16 [Doc. No. 112-2] at p. 7.

Plaintiff requests the production of "any and all contracts between Defendants and FARA Insurance Services establishing FARA as the third-party administrator for claims where Defendants are the insurer under a policy of workers' compensation/employers liability insurance" and "any and all 'Handling Instructions' or equivalent documents provided by Defendants to FARA regarding FARA's role as the third-party administrator in claims where Defendants are the insurer under a policy of workers' compensation/employers liability insurance." Defendants object on the grounds that all responsive documents are irrelevant because FARA's handling of the claim is not at issue in this case, and that the requests are vague and overbroad in that they lack any time frame or geographic limit.[5]

The Court finds that Defendants' relevancy objection is not well taken because the handling of the *Phillips* claim – whether by Defendants directly or through their claims adjusters – is relevant

---

[4] Plaintiff issued the subpoena in compliance with Rule 45(a)(2) prior to an amendment effective December 1, 2013. As amended, this Court would now be the issuing court. However, under Rule 45(g) as amended, enforcement would still occur in "the court for the district where compliance is to occur" (here, Louisiana) unless the motion was transferred to the issuing court.

[5] Defendants also state that its contracts and documents provided to FARA are proprietary trade secrets and confidential business materials. However, these concerns could be alleviated by an appropriate protective order, similar to the Agreed Protective Order [Doc. No. 69] entered regarding underwriting files.

9

to Plaintiff's bad faith claim in this case. Plaintiff is entitled to know the nature of Defendants' contractual relationship with and directions to the third-party administrator for the *Phillips* claim. However, the Court also finds that Document Requests No. 15 and No. 16 are unreasonably broad in scope and, as to all "Handling Instructions" for claims against Defendants, unworkably vague. The Court orders the production of any contract or written agreement that Defendants had with FARA between 2007 and 2012 to provide claims services under employers liability policies covering Oklahoma employers, and any claims-handling guidelines or manuals applicable to FARA's services during this same time period for claims against Oklahoma employers.

3.      **Relevancy Objection to Other Documents/Information**

Plaintiff's position with regard to the remaining documents or information at issue in its Third Motion concern the following matters:

   a.     **Bonus Payments to Claims Handlers**

Defendants have refused to answer interrogatories or produce documents reflecting the method or system by which bonuses or incentive payments are determined for individuals who handle insured claims. They contend that this information is irrelevant, Plaintiff's requests are overbroad, and in any event, "Defendants have repeatedly advised Plaintiff that its examiners receive no financial benefit or incentives by denying benefits or claims." *See* Defendants Response to Third Motion to Compel [Doc. No. 119] at 7. The Court rejects Defendants' relevance argument. Further, as to the alleged lack of a correlation between the compensation of individual employees and the denial of claims, Plaintiff is clearly not required to take Defendants' word for it. Defendants point to no verified interrogatory answer, nor any sworn testimony or statement, that supports their position. They cite the deposition of one employee, Tara Barlin, where Plaintiff's counsel inquired

into this area. Defense counsel repeatedly objected to these questions and, improperly, instructed the witness not to answer. *See* Barlin Dep. [Doc. No. 107-3] at 312:23-313:22. When allowed to answer the question, "Is your bonus or incentive pay linked to money paid out by your department?", the transcript reflects that the witness paused and then stated, "I don't know specifically what goes into determining . . . ." *Id*. at 314:10-14. Thus, the Court finds Defendants' position that Plaintiff has received an adequate answer to its discovery requests is unsupported.

The Court also finds, however, that the wording of Plaintiff's discovery requests is overbroad. The Court orders Defendants to answer Interrogatory No. 9 and Interrogatory No. 11 and produce responsive documents to Request for Production No. 6, limited to the types and amounts of bonuses paid for the time period between 2007 and 2012 and the methods used to calculate such bonuses for any individual involved in handling the *Phillips* claim.

### b. **Complaints and Compliance Issues**

Defendants have refused to provide any information or documents regarding 1) complaints filed against them with the insurance commissioner (or other regulatory agency) related to similar insurance policies, 2) regulatory investigations made of their companies, and 3) other lawsuits asserting bad faith claims regarding employers liability coverage. Defendants again make a relevance objection and contend that Plaintiff's interrogatories as written are overbroad in that they include no temporal or geographical limits and request information for other affiliated companies within American International Group (AIG). During oral argument, defense counsel represented that no complaints were made in Oklahoma during 2012 and 2013 regarding employers liability policies.

Again, the Court finds that Defendants' relevance objection is not well taken and that unsworn statements of counsel are insufficient answers to Plaintiff's interrogatories. The Court agrees, however, that the interrogatories are unreasonably broad or inartfully phrased. The Court orders Defendants to answer Interrogatory Nos. 12-15 limited to identifying information regarding complaints lodged against Defendants with the Oklahoma Insurance Department related to workers' compensation or employers liability policies, regulatory investigations or audits of Defendants in Oklahoma within the past 5 years related to such policies, and lawsuits filed against Defendants in Oklahoma within the past 5 years alleging bad faith conduct with regard to workers' compensation or employers liability policies.

      **c.**      **Other *Parret* Claims**

Plaintiff has asked Defendants to produce claim files regarding other insureds who have sought coverage for *Parret* claims under a workers' compensation or employers liability policy. Plaintiff specifically references in Requests for Production No. 13 and No. 17, two lawsuits against particular insureds. Defendants contend the claim files of other insureds seeking coverage of *Parret* claims are irrelevant to the denial of coverage to Plaintiff. Defendants further contend that responding to the requests would be unduly burdensome because claims files are not kept in a manner that allows them to be searched according to subject matter or coverage issues and "[t]here is no centralized computer database or electronic search field that shows claims involving *Parret* claims against issureds." *See* Defendants' Response to Third Motion to Compel [Doc. No. 119] at 14. Finally, Defendants note that the claim files would contain personal and health information subject to federal and state privacy laws, and possibly subject to confidentiality agreements or protective orders, and would require individual screening of each file.

12

The Court finds that information regarding Defendants' handling of other insured employers' claims for coverage of *Parret* lawsuits is relevant to Plaintiff's claim of bad faith in Defendants' denial of indemnity for the *Phillips* case. Further, Defendants' argument that it would be an undue burden to identify claim files of other insureds involving *Parret* issues is not persuasive when the parameters of inquiry are limited to Oklahoma employers insured by Defendants under employers liability policies that have faced *Parret* claims within the past 5 years. By their nature, *Parret* claims must be asserted in a lawsuit filed outside of workers' compensation court. The scope of document production should also be limited to court filings and records rather than Defendants' claim files, thus obviating the need to review for private and privileged material.

    **d.**    **Claim Handling Protocols**

Plaintiff's Requests for Production No. 20 and No. 22 seek copies of "Claims Handling Guidelines" provided by Defendants to third-party administrators, as well as "Claims Protocols." *See* Third Motion to Compel, Ex 4 [Doc. No. 112-4] at pp. 6-7.[6] Plaintiff complains that Defendants' production has been limited to the claim protocols of the Primary Severity Unit (PSU) that was handling Plaintiff's claim when coverage was denied. Plaintiff pushes for, at the least, third-party administrators' handling guidelines for Oklahoma policies and claim protocols for workers' compensation and employers liability policies in Oklahoma for a time limitation to be determined by the Court. *See* Third Motion to Compel [Doc. No. 112] at p. 14, n.52. In light of the Court's determination that guidelines applicable to claims handling by FARA should be produced, and Defendant's prior production of PSU claim protocols, no further production will be ordered.

---

[6] Request No. 22 also seeks the production of "Underwriting Protocols." However, Defendants have represented that there is no underwriting manual and that the underwriting guidelines for Plaintiff's policies were previously produced in compliance with the Court's prior order for production of underwriting files.

13

## C.  Conclusion

For these reasons, the Court finds that Defendants should be required to produce additional documents and answer interrogatories, as set forth herein, subject to an appropriate protective order limiting the disclosure of any proprietary or other private information. The Court further finds that pursuant to Rule 37(a)(5)(C), each party should bear its own costs.[7]

IT IS THEREFORE ORDERED as follows:

- Plaintiff's Motion to Compel [Doc. No. 89] is GRANTED in part and DENIED in part, as set forth herein;

- Plaintiff's Second Motion to Compel [Doc. No. 104] is DENIED as moot;

- Plaintiff's Motion to Compel Production Pursuant to Subpoena Duces Tecum Served on Non-Party F.A. Richards and Associates [Doc. No. 98] is DENIED; and

- Plaintiff's Third Motion to Compel Production of Documents from Defendants [Doc. No. 112] is GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that responsive, nonprivileged documents and interrogatory answers that are subject to production under this Order must be produced within 21 days of this Order. Counsel for the parties are directed to meet and confer in a good faith effort to agree on the terms of a protective order pursuant to Rule 26(c)(1)(G). If the parties are unable to reach an

---

[7] Although this discovery dispute involved certain legitimate and substantial issues fully appropriate for presentation to the Court, it also presented disputes over positions not well grounded in fact or law which should have been resolved by the parties through reasonable, cooperative, good faith efforts. Significant time and resources have been expended by the Court addressing such issues, at the expense of other cases on the Court's docket. Any future dispute in this case which presents discovery issues which are not well-grounded, or which should have been resolved without Court intervention, will involve an award of attorney's fees and costs, and other appropriate sanctions, against the offending party or parties.

agreement within 10 days of this Order, then Defendants may seek the entry of such a protective order by filing a motion advising the Court of the parties' proposals and the unresolved issues.

IT IS SO ORDERED this 6th day of February, 2014.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE