IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CUDD PRESSURE CONTROL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-12-1178-D |
| | ) | |
| NEW HAMPSHIRE INSURANCE COMPANY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**O R D E R**

This matter comes before the Court on cross-motions for summary judgment filed pursuant to Fed. R. Civ. P. 56: Defendants' Motion for Summary Judgment [Doc. No. 35]; and Plaintiff's Motion for Summary Judgment [Doc. No. 49]. Both Motions are fully briefed and at issue.[1]

**Factual and Procedural Background**

Plaintiff Cudd Pressure Control, Inc. ("Cudd") brought suit in the District Court of Oklahoma County, Oklahoma, against two insurance companies that issued employers liability ("EL") policies to RPC, Inc. (Cudd's parent company) which also insured Plaintiff. The policy of Defendant New Hampshire Insurance Company ("New Hampshire") applied to work in Texas, and the policy of Defendant National Union Fire Insurance Company of Pittsburgh, PA ("National Union") applied to work in other states, including Oklahoma.[2] Defendants timely removed the case to federal court based on diversity jurisdiction. The case involves claims for breach of contract and breach of an

[1] Defendants' Motion was opposed by Plaintiff's response brief [Doc. No. 87], to which Defendants filed a reply [Doc. No. 103]. Plaintiff's Motion was opposed by Defendants' response brief [Doc. No. 61], to which Plaintiff filed a reply [Doc. No. 88].

[2] National Union also issued an umbrella policy that provided excess coverage above the limits of the underlying policy, but Plaintiff concedes the umbrella policy "does not come into play, except as evidence of [Defendants'] claims handling practices." *See* Pl.'s Mot. Summ. J. [Doc. No. 49] at 1-2, n.1.

insurer's duty of good faith and fair dealing arising from Defendants' failure to indemnify Cudd for its settlement of a lawsuit alleging the wrongful death of an employee, *Phillips v. Cudd Pressure Control, Inc*., No. CIV-09-1197-M (W.D. Okla.). Defendants provided a defense of the *Phillips* case, and Cudd obtained a favorable summary judgment ruling. During an ensuing appeal, Defendants did not participate in settlement negotiations and denied coverage. The parties to the *Phillips* case reached an agreement that resulted in a voluntary dismissal of the appeal in exchange for Cudd's payment of an amount of money within the coverage limits of the policies. In this case, Cudd seeks to recover the amount paid in settlement of the *Phillips* case, plus other compensatory and punitive damages.

By their respective Motions, both Plaintiff and Defendants seek summary judgment in their favor. Defendants contend Plaintiff cannot prevail on either of its claims because Cudd's only potential exposure in the *Phillips* case was a tort claim alleging intentional conduct under an exception to the exclusivity of workers' compensation remedies recognized in *Parret v. UNICCO Service Co*., 127 P.3d 572 (Okla. 2005). Defendants assert that a *Parret* claim was not covered by the EL policies because they had identical provisions providing coverage only for an employee's bodily injury by accident or disease, and excluding coverage for bodily injury intentionally caused by the employer. Defendants maintain they could not have breached the contracts or acted in bad faith by refusing to pay a non-covered *Parret* claim. Plaintiff takes the opposite view, arguing that both policies covered the claims asserted in the *Phillips* case and that both insurers engaged in bad faith conduct by failing to investigate coverage, denying coverage, and refusing to participate in the settlement negotiations that resolved the *Phillips* case.

## Standard of Decision

Summary judgment is proper "if the movant shows there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for either party. *Id*. at 255. All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Id*. If a party who would bear the burden of proof at trial lacks sufficient evidence on an essential element of a claim, then all other factual issues regarding the claim become immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Id*. at 322-23. If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *see Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see* Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the cited materials, but may consider other materials in the record." Fed. R. Civ. P. 56(c)(3); *see Adler*, 144 F.3d at 672. The court's inquiry is whether the facts and evidence of record present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## Undisputed Facts

Cudd, an oilfield service company, employed Allen Darrell Phillips through its office in Cushing, Oklahoma. Mr. Phillips was working on an assigned job near Wheeler, Texas, at the time of his death on January 4, 2008. His widow, Tonya Phillips, filed a claim under the Oklahoma Workers' Compensation Act and obtained a full recovery of benefits for herself and two minor children. Mrs. Phillips subsequently filed a civil action in federal court seeking damages individually and as personal representative of Mr. Phillips' estate from Cudd and two equipment manufacturers or suppliers. As to Cudd, Mrs. Phillips' complaint alleged that her husband's injuries and death were caused by numerous negligent acts with "Cudd's knowledge that such negligence was substantially certain to result in the serious injury and/or death of its employee, Phillips." *See Phillips v. Cudd Pressure Control, Inc.*, Case No. CIV-09-1197-M, Compl. ¶ 30 (W.D. Okla. Oct. 30, 2009).[3] Apparently invoking the limited exception to workers' compensation exclusivity recognized in *Parret*, the complaint claimed that Mr. Phillips' injuries and death "were foreseeable and known to be substantially certain to occur from the standpoint of [Cudd]" and "were avoidable and unnecessary but for the willful, wanton, and gross negligence of Cudd which, under the circumstances, was tantamount to intentional conduct." *Id.* ¶ 30; *see Parret*, 127 P.3d at 578-79 (adopting the "substantial certainty" standard).[4]

---

[3] A copy of the complaint appears in the case record as exhibits to both summary judgment briefs. *See* Defs.' Ex. 4 [Doc. No. 35-6]; Pl.'s Ex. 3 [Doc. No. 49-3]. The parties have also submitted other duplicate exhibits with their briefs. For ease of reference, the Court provides throughout this Order only one citation for each point of fact for which a cite is needed.

[4] The complaint also alleged that Mr. Phillips' injury and death were the result of "Cudd's willful and wanton negligence as described above with knowledge that such negligence was substantially certain to result in serious injury or death to its workers." *Id.* ¶¶ 45, 48, 51.

Cudd was insured in January, 2008, under an EL policy issued by National Union for covered losses related to operations in Oklahoma and 15 other states,[5] and an EL policy issued by New Hampshire for covered losses related to operations only in Texas. Both policies contained identical coverage provisions and identical exclusions, which will be set forth *infra* as pertinent to the discussion. Through the insurance broker for both policies, Cudd provided timely notice of the *Phillips* lawsuit. National Union, through a claims administrator, denied coverage by letter dated September 15, 2011, for the following reasons: 1) the *Parret*-based claims asserted in *Phillips* are not for bodily injury by "accident;" 2) for the same reason, "the intentional injury exclusion may negate coverage;" 3) if Mr. Phillips' employment in Texas was not necessary or incidental to Cudd's work in Oklahoma, it would not be covered under National Union's policy; and 4) an endorsement specified that the policy provided no coverage in Texas so "this endorsement may also bar coverage for Plaintiff's claims." *See* Pl.'s Ex. 5 [Doc. No. 49-5] at 3-4.[6]

In response to a request for consideration under the New Hampshire policy issued for Texas, the same adjuster initially denied coverage by letter dated November 16, 2011. This letter was substantially similar to the one sent on behalf of National Union but relied on only the first two reasons, that is, that *Parret*-based claims are not for bodily injury by "accident," and the intentional injury exclusion may apply. In a subsequent letter dated January 24, 2012, however, the adjuster amended and replaced the November 16 letter with one advising Cudd of a "potential for coverage" under the New Hampshire policy and stating that a defense would be provided subject to a

---

[5] The policy also potentially covered work in 25 additional states, if the "Other States Insurance" part of the policy was implicated. *See* Pl.'s Ex. 2 [Doc. No. 49-2] at 1, 7

[6] For some unexplained reason, the adjuster sent an identical letter dated September 29, 2011. *See* Pl.'s Ex. 6 [Doc. No. 49-6].

reservation of rights. *See* Pl.'s Ex. 10 [Doc. No. 49-10] at 1. New Hampshire expressly "reserve[d] the right to deny a defense, indemnity or both" for the reasons stated in the November 16 letter and the additional reason that coverage for punitive damages may be prohibited.[7] *See id*. at 3.

Cudd was represented during the *Phillips* case at New Hampshire's expense by its counsel of record in this case. Following discovery in *Phillips*, Cudd filed a motion for summary judgment asserting that it was entitled to judgment as a matter of Texas law, and alternatively Oklahoma law, because Mrs. Phillips had elected a workers' compensation remedy and because she could not establish an exception to exclusivity of the workers' compensation statutes. Mrs. Phillips took the position that Oklahoma law controlled her claim, and permitted the recovery of tort damages.

The presiding judge, Chief Judge Vicki Miles-LaGrange, granted Cudd's motion and entered a summary judgment in its favor in April, 2012. *See Phillips v. Cudd Pressure Control, Inc*., Case No. CIV-09-1197-M, 2012 WL 1150831 (W.D. Okla. April 6, 2012) (unpublished). In issuing her ruling, Chief Judge Miles-LaGrange first applied Oklahoma's choice of law rules and found that Oklahoma law governed Mrs. Phillips' claims. *See id*., 2012 WL 1150831 at *2. Then predicting how the Oklahoma Supreme Court would rule regarding the effect of Mrs. Phillips' prior election of a workers' compensation remedy, the judge found the *Parret* claim was barred by Oklahoma law regarding the election of remedies.[8] Mrs. Phillips filed a motion for relief from the judgment, which

---

[7] The exclusive remedy provision of the Texas statute permits a surviving spouse to recover workers' compensation benefits and punitive damages (but not compensatory damages) if the employee's death was caused by the employer's gross negligence. *See* Tex. Lab. Code § 408.001.

[8] Chief Judge Miles-LaGrange also rejected as factually unsupported a contention by Mrs. Phillips that she could maintain a negligence claim against Cudd under the "dual persona" doctrine. Cudd does not allege in its pleading in this case or argue in its summary judgment briefs that any negligence claim under this doctrine of Oklahoma law provided a basis for coverage under the EL policies. Therefore, this aspect of the *Phillips* summary judgment ruling is immaterial.

was denied. *See Phillips v. Cudd Pressure Control, Inc*., Case No. CIV-09-1197-M, 2012 WL 2120770 (W.D. Okla. June 11, 2012) (unpublished).

Mrs. Philips timely appealed, and the Tenth Circuit set the case for a mediation conference. Cudd's counsel notified the claims administrator, Chartis, of the conference setting and Cudd's coverage position, and demanded that Chartis assist in preparing for the conference and funding a possible settlement. Cudd's counsel provided an assessment of possible outcomes of the appeal, including certification of an unsettled question of state law to the Oklahoma Supreme Court. Chartis responded that it would continue to provide a defense and would assist counsel in the mediation, but there was no coverage for a settlement of Mrs. Phillips' claim under either EL policy.

During the mediation process, Cudd's counsel informed Chartis of a settlement demand by Mrs. Phillips that he and other attorneys considered to be reasonable under the circumstances. The amount was within the limits of coverage under the policies, and counsel therefore demanded that Chartis either agree to pay the amount in full or waive any challenge to the reasonableness of the amount. Chartis promptly responded by letter dated July 19, 2012, that Defendants adhered to their coverage positions, stating as follows:

> Because there is no coverage for the claims against Cudd under the policies, we view the resolution of [the *Phillips*] case to rest entirely with Cudd. Chartis neither consents to the settlement nor withholds its consent. Cudd should therefore do what it [sic] is in its best interests in the negotiations. New Hampshire and National Union do not waive any potential arguments or defenses, including those concerning the reasonableness of the settlement amount.

*See* Pl.'s Ex. 19 [Doc. No. 49-19], Letter at 1-2. Cudd subsequently settled the *Phillips* case for a smaller sum without Defendants' assistance, and demanded that Chartis fund the full amount of the settlement. Chartis refused based on Defendants' positions regarding their respective policies "that

there is no coverage or indemnity for the claim against [Cudd], because the claim does not constitute an accident or 'occurrence' under the policies." *See* Pl.'s Ex. 22 [Doc. No. 49-22].

## Discussion

### A. Breach of Contract

The parties' dispute involves the pertinent coverage provisions of the EL policies, which state as follows:

> A. How This Insurance Applies
>
> This employers liability insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes death.
>
> 1. The bodily injury must arise out of and in the course of the injured employee's employment by you.
>
> 2. The employment must be necessary or incidental to your work in a state or territory listed in Item 3.A. of the Information Page.
>
> 3. Bodily injury by accident must occur during the policy period.
>
> * * *
>
> B. We Will Pay
>
> We will pay all sums you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this Employers Liability Insurance.

*See* Pl.'s Ex. 1 [Doc. No. 49-1] at 7; Pl.'s Ex. 2 [Doc. No. 49-2] at 5.[9] The dispute also concerns a specific exclusion from EL coverage for "bodily injury intentionally caused or aggravated by you." *See* Pl.'s Ex. 1 at 8; Pl.'s Ex. 2 at 6.

[9] These spot cites and subsequent citations to policy provisions utilize page numbers assigned by the ECF system.

Cudd argues that application of the National Union policy to the claim asserted in *Phillips* is governed by Oklahoma law, while the application of the New Hampshire policy is governed by Texas law. With regard to Oklahoma law, Cudd argues that a *Parret* claim does not require proof of intent to injure and so it may involve an accidental injury under decisions of the Oklahoma Supreme Court. With regard to Texas law, Cudd argues that the Texas Labor Code provides an exception to the exclusive workers' compensation remedy where the employer is guilty of gross negligence, and Mrs. Phillips' allegation of gross negligence by Cudd would support a tort recovery that is not excluded from coverage as an intentional act. Defendants contend that regardless of what law governs the insurance contracts, the *Phillips* case involved a *Parret* claim for intentional injury and the plain language of the policies provided no coverage for it.

Cudd's arguments confuse two distinct questions: what law governs its breach of contract claims; and what law governed the tort claim asserted in the *Phillips* case? Chief Judge Miles-LaGrange has already determined that Oklahoma law governed Mrs. Phillips' action against Cudd, and this legal ruling stands unaffected by the settlement, which resolved the appeal but did not disturb the judgment in Cudd's favor.[10] Any contention that Texas law governed Mrs. Phillips' claim is also inconsistent with Cudd's pleading in this case, which alleges that "Mrs. Phillips sought additional recovery in federal court under the 'substantial certainty' test set forth in *Parret* . . . ." *See* Petition [Doc. No. 1-2], ¶ 18. Finally, the parties do not present sufficient facts in their summary judgment materials to permit a new determination of what law governed Mrs. Phillips' tort claim.

[10] The doctrine of issue preclusion "'bars a party from relitigating an issue once it has suffered an adverse determination on the issue, even if the issue arises when the party is pursuing or defending against a different claim.'" *See Buscho v. Shurtleff*, 729 F.3d 1294, 1301 (10th Cir. 2013) (quoting *Park Lake Res. Ltd. Liab. Co. v. U.S. Dep't of Agric.*, 378 F.3d 1132, 1136 (10th Cir. 2004)). Cudd argued unsuccessfully in *Phillips* for the application of Texas law, which was more favorable to its summary judgment position.

Under Oklahoma's choice-of-law rules, the Court would need to determine whether Oklahoma or Texas had "the most significant relationship to the occurrence and the parties" in the *Phillips* case. *See Brickner v. Gooden*, 525 P.2d 632, 637 (Okla. 1974). The facts pertinent to this issue were presented to Chief Judge Miles-LaGrange, and she conducted the requisite analysis and decided that Oklahoma law applied. *See Phillips*, 2012 WL 1150831 at *2. The only issue now presented for resolution in this case is whether Mrs. Phillips' Oklahoma-law tort claim under *Parret* was covered by the insurance policies at issue.

Turning to the question of what law governs Cudd's breach of contract claims against Defendants, Oklahoma's choice-of-law rules for contract actions are determined by statute: "A contract is to be interpreted according to the law and usage of the place where it is to be performed, or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." *See* Okla. Stat. tit. 15, § 162. Based on a preference for the place of performance, the Oklahoma Supreme Court has announced: "It is only when there is *no indication in the contract* where performance is to occur that the interpretation would apply the *lex loci contractus* rule." *Panama Processes, S.A. v. Cities Serv. Co.*, 796 P.2d 276, 287 (Okla. 1990) (emphasis in original). In this case, because two separate contracts are in dispute, the answer to the question of what law applies may differ for each of the EL policies.

The National Union policy covered work of the insured employers in 16 states, including Oklahoma, while the New Hampshire policy covered only work in Texas. Cudd contends that the New Hampshire policy is governed by Texas law because the insured risk was located wholly within that state; Cudd relies on Oklahoma law in its discussion of the National Union policy without addressing why. Defendants contend it does not matter what state's law applies because the same

result is reached under either Texas or Oklahoma law; their arguments utilize case authorities from both states.

The Court is willing to assume that the place of performance of the New Hampshire policy is Texas; the policy provided workers' compensation and EL insurance coverage for business operations only in that state. However, the National Union policy provided multi-state coverage, and thus, the place of contracting may provide the applicable law. *See Bohannon v. Allstate Ins. Co.*, 820 P.2d 787, 797 (Okla. 1991). Neither party provides sufficient information to permit a determination of where the contract was made.[11] Also, both parties rely on Oklahoma law in arguments regarding the National Union policy. Therefore, the Court finds that the parties have waived any conflict of laws, and the Court will address the coverage issues under only the laws of Oklahoma and Texas. *See Mauldin v. Worldcom, Inc.*, 263 F.3d 1205, 1211-12 (10th Cir. 2001) (where party's brief relied substantially more on one forum's precedent, argument that another forum's law should apply was "so feeble as to constitute a waiver of the argument").

**1. Oklahoma Law**

Oklahoma law follows well-settled rules concerning insurance policies. "An insurance policy is a contract. If the terms are unambiguous, clear and consistent, they are to be accepted in their ordinary sense and enforced to carry out the expressed intentions of the parties." *Phillips v. Estate of Greenfield*, 859 P.2d 1101, 1104 (Okla. 1993). "Terms of an insurance policy must be considered not in a technical but in a popular sense, and must be construed according to their plain,

[11] Cudd appears to argue that both contracts were made in Texas because "Cudd's principal place of business and its broker on the Policy, Aon Risks Services of Texas, are located in Houston, Texas." *See* Pl.'s Mot. Summ. J. [Doc. No. 49] at 14. This argument ignores the fact that the named insured is Cudd's parent company, RPC, Inc., whose address is Atlanta, Georgia. It is also inconsistent with the undisputed allegation of Cudd's pleading that its principal place of business is Atlanta, Georgia. *See* Petition [Doc. No. 1-2], ¶ 1; *see also* Notice of Removal [Doc. No. 1], ¶ 3.

ordinary and accepted sense in the common speech of men, unless it affirmatively appears from the policy that a different meaning was intended." *Webb v. Allstate Life Ins. Co.*, 536 F.2d 336, 339 (10th Cir. 1976) (applying Oklahoma law).

The Oklahoma Supreme Court considered the meaning of "accident" in *U.S. Fidelity & Guaranty Co. v. Briscoe*, 239 P.2d 754 (Okla. 1951), a case in which a highway contractor sought coverage for nuisance claims related to cement dust emanating from its operations. The court found that an "accident" within the meaning of an insurance policy that does not define the term should be "considered according to common speech and common usage of people generally." *Id*. at 756. After consulting definitions stated in a popular dictionary and other sources, the court determined that an accident "is a distinctive event that takes place by some unexpected happening, the date of which can be fixed with certainty." *Id*. at 757. The court also observed that if an actor "performs or does a voluntary act, the natural, usual and to-be expected result of which is to bring injury or damage upon himself, then resulting damage, so occurring, is not an accident, in any sense of the word." *Id*. The court determined in *Briscoe* that there was no accident because "the claims asserted against the contractor . . . were predicated upon a series of acts, which continued approximately four months, and, at all times, [were] voluntary, intentional, tortious and wrongful." *Briscoe*, 239 P.2d at 758.

The Oklahoma Supreme Court also considered the meaning of "accident" in the context of uninsured motorist coverage in *Willard v. Kelley*, 803 P.2d 1124 (Okla. 1990). There, a police officer sought insurance coverage for injuries suffered when he was shot by an uninsured driver who was being pursued as a robbery suspect. The court stated that "the terms 'accident' or 'accidental' have long been held to describe an occurrence which is unexpected, unintended and unforeseen in

the eyes of the insured. This is to say, even if an insured becomes the victim of an intentional act, the nature of the injury is nonetheless viewed as accidental, so long as the harm was not the reasonably foreseeable result of the insured's own wilful act or misconduct." *Id*. at 1128-29 (footnotes omitted). The court held that, absent a different definition in the insurance policy, an accident is an event that is "unprovoked, unforeseen, and unintended on the part of the insured" when viewed objectively from a reasonable person's perspective. *See id*. at 1129 (emphasis omitted).

The Oklahoma Supreme Court again considered the meaning of "accident" in the context of accidental death insurance in *Cranfill v. Aetna Life Ins. Co.*, 49 P.3d 703 (Okla. 2012), where an intoxicated driver caused his own death in a single-vehicle collision. The court held that the driver died as the result of an accident. The court rejected the insurer's position that applying the rule stated in *Willard*, the insured's death was not accidental because it "was a reasonably foreseeable consequence of his driving while intoxicated." *Id*. at 706. The court reasoned that "contract terms are not analyzed under the tort principle of foreseeability." *Id*. Instead, "[i]t is only when the consequences of the act are so natural and probable as to be expected by any reasonable person that the result can be said to be so foreseeable as not to be accidental." *Id*. at 707.

Applying these rules to the facts of this case, it seems clear to the Court that a personal injury or wrongful death claim brought in a civil action under *Parret* cannot be deemed to involve an "accident" within the common meaning of that term. *Parret* defined an intentional tort that could be brought against an employer outside the exclusive remedy provision of the Oklahoma Workers' Compensation Act. Consistent with the holding of *Parret*, Mrs. Phillips alleged an intentional tort, that is, negligent conduct by Cudd so egregious that Cudd knew its conduct was substantially certain

to result in serious injury or death to Mr. Phillips. If this claim were proven, Mr. Philips' injury and death would not have been an unexpected or unforeseen happening when viewed objectively from Cudd's perspective but, rather, would have been such a natural and probable consequence of Cudd's alleged misconduct as to be expected by a reasonable person. The Court notes that every court to consider the issue under Oklahoma law has found no liability coverage for a *Parret* claim, either because no accident or accidental injury occurred, *see Pennsylvania Mfrs.' Ass'n Ins. Co. v. Lechner*, 910 F. Supp. 2d 1291, (N.D. Okla. 2012) (citing other unpublished decisions in that district); or because the injury was intentionally caused by the employer and thus excluded from coverage. *See CompSource Okla. v. L&L Constr., Inc*., 207 P.3d 415, 421 (Okla. Civ. App. 2008).

Accordingly, the Court finds that the claim asserted in *Phillips* did not involve bodily injury by "accident" under Oklahoma law. Therefore, assuming Oklahoma law applies, Mrs. Phillips' claim was not covered by National Union's EL policy, and Cudd was not entitled to indemnity for its liability on that claim.

**2. Texas Law**

Similarly, Texas law holds that the term "accident" in an insurance policy is given its commonly understood meaning if it is not defined in the policy, and it is "generally understood to be a fortuitous, unexpected, and unintended event." *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 8 (Tex. 2007). "[A]n injury is accidental if 'from the viewpoint of the insured, [it is] not the natural and probable consequence of the action or occurrence which produced the injury; or in other words, the injury could not reasonably be anticipated by the insured, or would not ordinarily follow from the act or occurrence which caused the injury.'" *Mid-Century Ins. Co. v. Lindsey*, 997 S.W.2d 153, 155 (Tex. 1999) (quoting *Republic Nat'l Life Ins. Co. v. Heyward*, 536 S.W.2d 549,

557 (Tex. 1976)). On the other hand, "an intentional tort is not an accident . . . regardless of whether the effect was unintended or unexpected." *Lamar Homes*, 242 S.W.2d at 8; *see also Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 827-28 (Tex. 1997). Under Texas law, "a claim does not involve an accident or occurrence when either direct allegations purport that the insured intended the injury (which is presumed in cases of intentional tort) or circumstances confirm that the resulting damage was the natural and expected result of the insured's actions, that is, was highly probable whether the insured was negligent or not." *Lamar Homes*, 242 S.W.3d at 9; *see National Union Fire Ins. Co. v. Puget Plastics Corp.*, 532 F.3d 398, 402 (5th Cir. 2008). Further, according to the Texas Supreme Court, an injury is intentional if an insured "intends the consequences of his act, or believes that they are substantially certain to follow." *See State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 378 (Tex. 1993).

Applying these authorities, there is no coverage for Mrs. Phillips' *Parret* claim under Texas law for the same reasons that there is no coverage under Oklahoma law. Viewed through the lens of a *Parret* claim, Mr. Philips' death was not caused by "accident" but was the natural and expected result of Cudd's alleged conduct and the misconduct was intentional because Cudd allegedly acted with knowledge that injury was substantially certain to occur. Therefore, Cudd is not entitled to indemnity under New Hampshire's EL policy for its liability in the *Phillips* case.

**B. Insurer's Bad Faith**

Cudd also asserts a claim against Defendants under Oklahoma law for breach of the insurer's "'implied-in-law duty to act in good faith and deal fairly with the insured to ensure that the policy benefits are received.'" *Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080, 1093 (Okla. 2005) (quoting

*Christian v. Am. Home Assur. Co.*, 577 P.2d 899, 901 (Okla. 1977)). The elements of a "bad faith" tort claim against an insurer for denial of coverage are:

> (1) claimant was entitled to coverage under the insurance policy at issue; (2) the insurer had no reasonable basis for delaying payment; (3) the insurer did not deal fairly and in good faith with the claimant; and (4) the insurer's violation of its duty of good faith and fair dealing was the direct cause of the claimant's injury. The absence of any one of these elements defeats a bad faith claim.

*Ball v. Wilshire Ins. Co.*, 221 P.3d 717, 724 (Okla. 2009) (footnotes omitted). Based on the Court's finding that Cudd was not entitled to coverage under the EL policies for Mrs. Phillips' *Parret* claim, the first element of Cudd's bad faith claim cannot be met. Cudd also cannot show that Defendants lacked a reasonable basis for denying coverage when Cudd demanded that they participate in the settlement. "The critical question in a bad faith tort claim is whether the insurer had a 'good faith belief, at the time its performance was requested, that it had a justifiable reason for withholding . . . payment under the policy.' If there is a legitimate dispute concerning coverage or no conclusive precedential legal authority requiring coverage, withholding or delaying payment is not unreasonable or in bad faith." *Id*. at 725 (footnotes omitted). Because Cudd cannot establish essential elements of its bad faith claim, Defendants are entitled to summary judgment on Cudd's tort claim.

## Conclusion

For these reasons, the Court finds that Defendants are entitled to a judgment in their favor as a matter of law.

IT IS THEREFORE ORDERED that Plaintiff's Motion for Summary Judgment [Doc. No. 49] is DENIED and that Defendants' Motion for Summary Judgment [Doc. No. 35] is GRANTED. Judgment shall be entered accordingly.

IT IS SO ORDERED this 16th day of June, 2014.

TIMOTHY D. DEGIUSTI
UNITED STATES DISTRICT JUDGE